UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

JOSEPH WAYNE BUTLER,

        Plaintiff,

    v.

MICHAEL ASTRUE,
Commissioner of Social Security
Administration,

        Defendant.

Case No. 1:12-CV-6 JVB

**OPINION AND ORDER**

      Plaintiff Joseph Wayne Butler seeks judicial review of the final decision of Defendant Michael J. Astrue, Commissioner of Social Security, who denied his application for Disability Insurance Benefits under the Social Security Act, 42 U.S.C. § 416(i), 423 *et seq*. For the following reasons, the Court affirms the Commissioner's decision.

**A. Procedural Background**

      On June 9, 2009, Plaintiff applied for disability benefits due to a disabling condition that began on February 15, 2009. (R. 132.) Plaintiff's claim was denied on October 23, 2009, and upon reconsideration on December 8, 2009. (R. 70, 82.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). (R. 88.)

      On December 21, 2010, the ALJ determined Plaintiff was not entitled to Social Security disability benefits. (R. 48–58.) The ALJ found as follows:

    1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2. The claimant has not engaged in substantial gainful activity since February 15, 2009, the alleged onset date.
3. The claimant has the following severe impairments: degenerative disc disease and degenerative joint disease.
4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.
5. The claimant has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b) but should never climb ladders, ropes, scaffolds; should only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl; and should only occasionally engage in overhead reaching with the upper left extremity.
6. The claimant is unable to perform any past relevant work.
7. The claimant was born on August 12, 1963, and was 45 years old on the alleged disability date, which is defined in the Social Security Act as a younger individual. (Age 18–49.)
8. The claimant has at least a high school education and is able to communicate in English.
9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills.
10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.
11. The claimant has not been under a disability, as defined in the Social Security Act, from February 15, 2009, through the date of this decision.

(R. 53–58.)

The ALJ's opinion became final when the Appeals Council denied Plaintiff's request for review on September 28, 2011. (R. 63–66.)

**B. Factual Record**

**(1)** *Plaintiff's Background*

Plaintiff was born on August 12, 1963. (R. 132.) He completed the tenth grade, later received a General Equivalency Degree, and is able to communicate, read, and write in English.

(R. 8, 171.) Plaintiff has a lengthy work history, which includes working as a molding machine operator, a molding machine foreman, and a steel erector. (R. 152.)

Plaintiff currently lives in an apartment with a roommate. (R. 179.) He testified that his day consists of caring for his dogs, reading, watching television while using a heating pad, talking on the telephone, and preparing meals. (R. 179.) Plaintiff further testified that he will take his dogs for a walk, visit his mother, and shop for food, but all activities are dependent upon the level of his back pain. (R. 180–185.)

**(2)** *Medical Evidence*

Between 1995 and 2000, Plaintiff underwent extensive medical treatment for a variety of injuries and conditions. Plaintiff encountered three primary medical issues during this time. First, Plaintiff suffered from neck, left shoulder, and left arm pain that resulted from a shoulder injury in June 1995. (R. 589.) He re-injured this shoulder a month later doing manual labor, was placed on limited duty, and scheduled for physical therapy. (R. 585.) Plaintiff was eventually cleared to work without any restrictions from his shoulder injury. (R. 421.) Next, Plaintiff had surgery, which was successful, to address carpal tunnel syndrome in his right arm. (R. 376–385.) Finally, in January 2000, Plaintiff was diagnosed with depression, alcohol abuse, marijuana abuse, and cigarette abuse after threatening to harm himself and his family with a firearm. (R. 321–326.)

On August 6, 2007, Plaintiff had a T7–11 fusion back surgery as a result of a crush injury sustained at work one week earlier. (R. 530, 532, 542.) In April 2008, after a sometimes painful rehabilitation period, Plaintiff returned to work with a weight restriction and the option to take longer breaks as needed. (R. 220, 224.) Plaintiff was able to compete his required duties without significant difficulty. (R. 218.)

In the summer of 2009, Plaintiff again sought treatment for thoracic back pain. On July 19, 2009, Plaintiff went to Parkview Occupational Health Center and was told to use cold packs for his pain, exercise regularly, and return to work without restrictions. (R. 280.) Plaintiff returned to the hospital in August and received the same direction from the doctor. (R. 277.)

On August 27, 2009, Plaintiff was seen by Dr. Sohail, at the behest of the Disability Determination Bureau. (R. 251.) During the examination Plaintiff denied decreased range of motion or weakness in his upper extremities and stated that he was capable of sitting or standing for fifteen to thirty minutes, walking three to five blocks, and lifting forty to fifty pounds. (R. 251.) After examining Plaintiff, Dr. Sohail concluded that "[c]laimant has severe back pain secondary to spinal fusion . . . moderately-severe neck pain and stiffness . . . [and] severe pain associated with rigidity in most of spine. In view of above mentioned medical handicaps, claimant is unable to do any light job. (R. 254.) Dr. Sohail also noted that Plaintiff was in visible pain while being examined and was unable to move on or off the examining table with ease. (R. 252.)

In October 2009, Dr. Whitley, a state agency reviewing physician, reviewed Plaintiff's medical record and prepared a Physical Residual Functional Capacity Assessment. (R. 284.) Dr. Whitley assessed the record and found that Plaintiff could perform light-level work that included occasionally carrying up to twenty pounds. (R. 285.) Light work would also include standing, walking, or sitting about six hours in an eight hour work day, so long as breaks were provided. (*Id*.) Dr. Whitley also felt Plaintiff was limited to only occasionally climbing ramps or stairs, balancing, stooping, kneeling, crouching, and crawling, and could never climb a ladder rope or scaffolds. (R. 286.)

In April and May 2010, Plaintiff visited Dr. Lazoff, a pain management physician, on the referral of one of his providers from Parkview Occupational Health Center. (R. 489, 510.) Dr. Lazoff observed that Plaintiff had generalized tenderness along his spine, but "the range of motion along his cervical spine is functional and within normal limits." (R. 513.) During the May visit, Plaintiff reported that the oral steroids made him feel better, but once he went off them his pain symptoms returned. (R. 510.) Plaintiff also reported that his pain fluctuated between a "2 and 7" on a ten-point scale and Dr. Lazoff observed that he was not in any acute or chronic distress during the appointment. (*Id.*) Dr. Lazoff concluded his report by stating he would recommend an epidural injection since "the oral steroids worked great" and Plaintiff should continue regular work activities. (*Id.*)

**(3)** *Plaintiff's Testimony*

At the hearing, Plaintiff testified that he has headaches, back pain, and neck pain that keep him from working. (R. 10.) Plaintiff also briefly discussed his treatment with Dr. Lazoff, who was managing medications to deal with his back pain (R.15.) Next, Plaintiff described his daily schedule of activities to the ALJ. These included lying or sitting with a heating pad for forty-five minutes to an hour, preparing meals, napping, simple chores, and taking short walks to relieve his back discomfort. (R. 17–20.) Plaintiff then testified to the specifics of his neck and back pain and that he is not engaged in any physical therapy or exercise as they increase his pain. (R. 21–24.) Plaintiff then outlined that he could only bear to walk, stand, and sit for fifteen to twenty minutes per day. (R. 24–25.) Finally, Plaintiff testified that he had gone back to work after his medical issues between 1995 and 2000 and would like to work if he were physically able. (R. 31–32.)

**(4)** *Vocational Expert's Testimony*

Vocational Expert ("VE"), Glee Ann Kehr, testified at Plaintiff's hearing before the ALJ on August 6, 2010. (R. 32.) The ALJ presented the VE with a hypothetical profile regarding Plaintiff's condition and his potential employment opportunities. (R. 35.) The ALJ's hypothetical question assessed that Plaintiff could not perform any of his past work. (*Id.*) The VE testified that jobs were available for someone with Plaintiff's residual functional capacity. (R. 36–37.) The VE relayed that someone with Plaintiff's residual functioning capacity could serve as a counter clerk, information clerk, office helper, account clerk, address clerk, or telephone clerk. (*Id.*) In Plaintiff's region there are approximately 40,000 jobs that fall into these categories. (R. 37–38.)

The ALJ then asked the VE if all of Plaintiff's subjective testimony were credible and supported by the medical evidence would there be any work he could undertake. (R. 38.) The VE replied that Plaintiff would not be able to sustain a forty hour work week, so no jobs would be available to him. (*Id.*)

**(5)** *ALJ's Decision*

The ALJ concluded that Plaintiff was not disabled under the Social Security Act. (R. 48.) The ALJ classified Plaintiff's degenerative disc disease and degenerative joint disease as severe impairments. (R. 53.) However, Plaintiff's impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 54.)

The ALJ found that Plaintiff was not disabled and has the residual functional capacity to perform light work as defined by 20 C.F.R. § 404.1567(b). (*Id.*) However, the ALJ did note that Plaintiff can only engage in light work if he is not required to climb ladders, ropes, or scaffolds

and only occasionally climbs ramps and stairs, balances, stoops, kneels, crouches, crawls, and engages in overhead reaching. (*Id*.)

The ALJ addressed Plaintiff's statements regarding his "constant, sharp, burning" back pain and other ailments when making the decision. (R. 55–57.) The ALJ relied heavily upon the medical opinions and notes from Plaintiff's own physicians. (R. 56.) The ALJ found the opinions of Dr. Lazoff and the Parkview Occupational Health Center to be consistent, reliable, and supported by the medical evidence in the record. (*Id*.) The ALJ was also influenced by these physicians repeatedly recommending that Plaintiff return to work with very few restrictions. (*Id*.) The ALJ also considered the examination of Plaintiff by Dr. Sohail and his conclusion that Plaintiff is unable to do any light work. (R. 56–57.) The ALJ opined that this conclusion was largely based on Plaintiff's subjective complaints and was the polar opposite of Dr. Lazoff and Parkview Occupational Health Center doctors who saw Plaintiff numerous times over a longer and more regular interval. (R. 57.)

While drafting the order, the ALJ made one misstatement and one mischaracterization of Plaintiff's testimony. The ALJ misstated the extent of Plaintiff's daily walking activities. The Plaintiff testified that he was only able to walk a few blocks at a time. (R. 24.) In the order the ALJ stated that Plaintiff "will go for an hour-long walk before lunch." (R. 55.) The ALJ also mischaracterized Plaintiff's testimony regarding the amount of time he spent on the couch or chair in the afternoon. In the order the ALJ stated that Plaintiff "will sit for about half of the afternoon on the couch." (R. 55.) Plaintiff actually testified that he uses a heating pad in the afternoon and switches back and forth between lying on the couch and sitting on the chair.

Plaintiff claims the ALJ erred in denying his application for social security disability benefits and has appealed the decision. According to Plaintiff, the ALJ erred in determining that

7

he was not credible and in finding that his residual functional capacity allowed light work. (DE 14, Pl.'s Br. at 11.)

**C. Standard of Review**

This Court has the authority to review Social Security Act claim decisions under 42 U.S.C. § 405(g.) The Court will uphold an ALJ's decision if it is reached under the correct legal standard and supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005.) Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971.) This Court will not reconsider facts, re-weigh the evidence, resolve conflicts in the evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005.) This Court will, however, ensure that the ALJ built an "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002.)

**D. Disability Standard**

To qualify for Disability Insurance Benefits or Supplemental Security Income claimants must establish that they suffer from a disability. A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A.) The Social

Security Administration established a five-step inquiry to evaluate whether a claimant qualifies for disability benefits. A successful claimant must show:

> (1) he is not presently employed; (2) his impairment is severe; (3) his impairment is listed or equal to a listing in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) he is not able to perform his past relevant work; and (5) he is unable to perform any other work within the national and local economy.

*Scheck v. Barnhart,* 357 F.3d 697, 699–700 (7th Cir. 2004.)

An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter,* 245 F.3d 881, 886 (7th Cir. 2001.) A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. (*Id.*) The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000.)

**E. Analysis**

Plaintiff claims the ALJ erred in denying his application for social security disability benefits and has appealed the decision. Plaintiff claims the ALJ erred in denying his application for social security disability benefits and has appealed the decision. According to Plaintiff, the ALJ erred in determining that he was not credible and in finding that his residual functional capacity allowed light work. (DE 14, Pl.'s Br. at 11.)  Plaintiff does not challenge the first four steps of the five step inquiry as to whether a claimant qualifies for disability benefits. Accordingly, this court will only examine whether the ALJ relied on substantial evidence in determining if Plaintiff is unable to perform any other work within the national and local economy.

**(1)** *Substantial evidence supports the ALJ's credibility determination*

An ALJ's credibility finding is entitled to "considerable deference" and will only be overturned if patently wrong. *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009). "This deferential standard acknowledges that the reviewing court does not have the opportunity to hear and see witnesses, as the ALJ does." *Sims v. Barnhart*, 442 F.3d 536, 537–38 (7th Cir. 2006). The ALJ must consider the claimant's level of pain, medication, treatment, daily activities, and limitations and must justify the credibility finding with specific reasons supported by the record. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009); 20 C.F.R. § 404.1529(c) (2010); *see also* SSR 96-7p, 1996 SSR LEXIS 4. An ALJ may find that an individual's statements are "credible to a certain degree." SSR 96-7p, 1996 SSR LEXIS 4.

Here the ALJ found that Plaintiff's "descriptions of pain are generally consistent with the medical evidence of record." (R. 55.) However, the ALJ found that the Plaintiff's testimony regarding the intensity, persistence, and limiting effects of his neck and back pain were not credible because they were inconsistent with the treatment records of every physician who has regularly treated him. (*Id.*)

The ALJ's credibility determinations were not patently wrong. The ALJ explained the credibility decision in a rational and logical manner and it was supported by substantial evidence in the record. The ALJ's findings took into account the Plaintiff's testimony and the medical evidence regarding Plaintiff's ability to perform a light level of work with some physical restrictions. While the ALJ misstated some of Plaintiff's testimony, these misstatements were not the sole basis for his residual functional capacity finding. (*Id.*) These misstatements, concerning Plaintiff's daily walking activities and afternoon regimen of sitting and lying down, merely served as an introduction to the ALJ's main finding and rationale that a light residual functional capacity is appropriate because of the medical treatment records of Dr. Lazoff and Parkview

Occupational Health Center. (*Id.*)  This finding is supported by numerous treatment notes from various physicians stating that Plaintiff has responded well to drug treatment and should engage in physical exercise or activity to assist in his recovery. The ALJ also emphasized that while he gave some weight to Dr. Sohail's report, he found the conflict between this report and others caused by Plaintiff's subjective complaints, not different medical findings. (R. 56–57.)

Since the ALJ relied on substantial evidence of record to make his credibility determinations, and they were not patently wrong, Plaintiff's argument that the ALJ erred in his credibility determination fails. *See, e.g., Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004.) ("An ALJ is in the best position to determine a witness's truthfulness and forthrightness; thus, this court will not overturn an ALJ's credibility determination unless it is patently wrong.")

**(2)** *The ALJ properly concluded that Plaintiff is able to perform a light level of work*

Plaintiff contends that the ALJ erred in finding that his residual functional capacity allowed him to perform light work so long as Plaintiff could work within certain physical limitations. Since Plaintiff's previous work was not sedentary, the burden shifts to Defendant to show that Plaintiff can perform some other job. *Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993).

The regulations define light work as being able to lift items weighing no more than twenty pounds and being able to walk, sit, or stand for some periods of time. *See* 20 C.F.R. § 404.1567(b). Claimants who can perform light work are also deemed capable of performing sedentary work unless they have a significant loss of manual dexterity or are unable to sit for long periods of time. Claimants can perform sedentary work if they can (1) sit up for approximately six hours during an eight-hour workday, (2) occasionally lift objects weighing up

11

to ten pounds, and (3) occasionally walk or stand for no more than two hours during an eight-hour workday. *See Edwards*, 985 F.2d at 339; Social Security Ruling 83-10.

In this case, the ALJ relied on both medical and non-medical evidence in assessing Plaintiff's residual functional capacity to do light work. The ALJ's finding is supported by substantial evidence including: reports from Plaintiff's treating physicians, Dr. Lazoff and the staff of Parkview Occupational Health Center; Plaintiff's positive response to drug and steroid treatment; and Plaintiff's own statements regarding his ability to perform basic work-related activities such as standing, household chores, sitting, and walking. The ALJ deliberated with a sufficient amount of information to allow him to serve as the final arbiter of all facts for the Commissioner of Social Security. 20 C.F.R. § 404.1527(e)(2.)

The ALJ's decision adequately analyzed the state agency physicians' reports on Plaintiff's residual functioning capacity, as well as reports from Plaintiff's own physicians. A critical element of the ALJ's decision, which exhibits careful thought and consideration of the evidence, was the discussion of the conflict between Dr. Lazoff's treatment notes, the Parkview staff's treatment notes, and Dr. Sohail's conclusions. The ALJ's findings demonstrate that Plaintiff's subjective complaints about his condition were considered but were insufficient to change the ruling because of the overwhelming amount of conflicting medical evidence.

The ALJ considered relevant evidence and reasonably concluded that Plaintiff could perform light work as long as the proper physical restrictions were adhered to in the work place. Therefore, it was rational and logical for the ALJ to find that Plaintiff's impairments were severe, but not to the extent that Plaintiff could not perform light work where some physical restrictions were in place. Accordingly, the Court must affirm the ALJ's decision regarding Plaintiff's ability to perform a light level of work with some physical restrictions.

**F. Conclusion**

The ALJ decided Plaintiff's claim using the correct legal standard and the decision was supported by substantial evidence. Therefore, the ALJ's decision is affirmed.

SO ORDERED on March 20, 2013.

                                           s/ Joseph S. Van Bokkelen
                                           JOSEPH S. VAN BOKKELEN
                                           UNITED STATES DISTRICT JUDGE